UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
MELISSA SCELSI,

                  Plaintiff,

     -against-

HABBERSTAD MOTORSPORT, INC.,
D/B/A HABBERSTAD BMW OF
BAYSHORE, AND ERIK
HABBERSTAD,

               Defendants.

**MEMORANDUM AND ORDER**

Case No. 2:19-cv-4315 (FB) (RLM)

*Appearances:*
*For the Plaintiffs*:
DANIEL GROSSMAN
181 Clermont Ave.
Apt. 106
Brooklyn, NY 11205

RACHEL DARA NICOTRA
Nicotra Law, PLLC
1115 Broadway, 12th Floor
New York, NY 10011

*For the Defendants*:
SAUL D. ZABELL
RYAN M. EDEN
1 Corporate Dr., Suite 103
Bohemia, NY 11716

**BLOCK, Senior District Judge:**

Plaintiff Melissa Scelsi ("Scelsi") brings this suit against Habberstad Motorsport, Inc., d/b/a Habberstad BMW of Bayshore ("Habberstad BMW") and Erik Habberstad ("Habberstad") (collectively, "Defendants") for: (i) disability discrimination under the Americans with Disabilities Act ("ADA"), (ii) sex discrimination under Title VII and the Pregnancy Discrimination Act ("PDA"), (iii)

1

disability discrimination under the New York State Human Rights Law ("NYSHRL"), (iv) sex discrimination under the NYSHRL, and (v) various New York Labor Law ("NYLL") violations. Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56 as to all claims and Scelsi has moved for summary judgment as to the ADA and NYSHRL discrimination claims, as well as the NYLL claims. She opposes summary judgment as to the remaining claims.

For the reasons that follow, Sclesi's motion is granted as to liability with respect to her minimum wage and WTPA claims, and the Defendants' motion is granted as to liability with respect to the Title VII and ADA claims against individual defendant Habberstad. Damages will be determined at trial. The parties' motions are denied as to all other claims.

## I.    FACTS

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and supporting documentation. They are undisputed unless otherwise noted.

Scelsi was employed as a car salesperson at Habberstad BMW from May 2013 until October 2018. In January 2018, she informed her direct supervisor and another employee that she was pregnant. Scelsi then agreed with Habberstad BMW's Human Resources Director, Linda Bartley ("Bartley"), that she would take maternity

2

leave from July 3, 2018 to October 1, 2018. Scelsi gave birth in early July and shortly thereafter began suffering symptoms of what was ultimately diagnosed as postpartum depression. On September 17, Scelsi notified her supervisor of her condition and told her that her doctor recommended extending her maternity leave. Scelsi's supervisor told her to contact Bartley to apprise her of the situation.

Scelsi informed Bartley via email on September 24 of her condition and told Bartley: "I do not believe, at this point, I will be well enough to return to work at my regular capacity. I would like to speak to you about what options are available to me, including extending my disability." ECF 62-8 at 2448. Scelsi then asked Bartley for a good time when the two of them could speak. *See id*. Bartley did not respond. On September 25, 2018, Scelsi followed up by emailing Bartley a doctor's note (the "September 25 email") stating that Scelsi was advised to stay out of work until further notice due to her postpartum depression. In the body of the email, Scelsi stated: "I can have a doctor fill out disability [sic] form too." ECF 62-13 at 2464. Bartley acknowledged receipt of the email and told Scelsi that she would get back to her shortly.

The next time Scelsi heard from Bartley was by letter dated October 1, 2018 (the "October 1 letter"). This letter stated in relevant part, "Given that you are not ready to return to work we ask that you keep us informed of when you intend to return to work. When you are ready, willing and able to return to work you will be

3

considered for an available vacancy for which you are qualified." ECF 62-9 at 2450. Scelsi and Defendants argue in large part over the meaning of this letter. Scelsi interpreted it to mean that she was fired. Defendants argue that this was the provision of a reasonable accommodation to Scelsi, and that she was not fired, but placed on administrative leave and removed from the payroll.

## II.   SUMMARY JUDGMENT

On a motion for summary judgment, the court must "resolv[e] all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (*citing Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). Summary judgment is appropriate only if the pleadings, the discovery materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The same standards are applicable to cross-motions for summary judgment: "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (internal citation and quotation omitted).

### III.   ADA AND NYSHRL DISABILITY DICRIMINATION CLAIMS

The legal standards to establish prima facie disability discrimination claims under the ADA and NYSHRL are the same. *See Noll v. International Business Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). For that reason, these claims are addressed together.

The parties do not dispute that Scelsi was disabled within the meaning of the ADA or NYSHRL or that Habberstad BMW is subject to these laws. Therefore, Scelsi's disability discrimination claims, which are premised on a failure to accommodate, turn on whether she suffered an adverse employment action because of her disability. *See also McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92 (2d Cir. 2009) (describing the elements of disability discrimination claim based on a failure to accommodate). If Habberstad BMW fired Scelsi, it is subject to liability under the ADA. Instead, if removing Scelsi from the payroll is found to not have been termination of her employment, then whether this action was instead a reasonable accommodation must be assessed. If the action was not a reasonable accommodation, liability attaches to BMW Habberstad. To determine a reasonable accommodation, the ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan v. N.Y. State Dept. of Labor*, 205 F.3d 562, 566 (2d Cir. 2000).

5

The account of the employment action at issue, in which Scelsi was removed from the payroll, is disputed by the parties. While Habberstad BMW characterizes this as a reasonable accommodation, Scelsi argues that it was a termination of her employment. Both parties have submitted evidence supporting their positions. For example, Scelsi submitted a letter from BMW Habberstad notifying her of her eligibility for continuation of benefits, and there is a box checked for "End of employment" as the qualifying reason. *See* ECF 62-9 at 3. However, there is no box to check on the form that would have fit Scelsi's situation. Also, Scelsi appears to have asked for extension of her leave with her September 25 email and doctor's note. This supports Habberstad BMW's position that the unpaid leave was a reasonable accommodation, since Scelsi indicated that she was unable to return to work at that time. The October 1 letter appears to support both parties' positions, since it states that Scelsi should let her employer know when she intends to return to work, but then tells her that she would be considered for a vacancy at that point, instead of automatically reinstated to her position. *See id*. at 2.

Also, while Scelsi makes a strong argument that Habberstad BMW failed to engage in an interactive process to determine a reasonable accommodation for her, this failure would not be enough to trigger liability. *McBride*, 583 F.3d at 100-1. Scelsi would still need to show that she was not given a reasonable

accommodation. Since reasonable minds could differ on this point, the Court finds it appropriate for a jury to make this necessarily fact-intensive assessment.

## IV.   TITLE VII, NYSHRL AND PDA SEX DISCRIMINATION CLAIMS

The PDA expands the protection against sex discrimination afforded by Title VII to discrimination based on pregnancy, childbirth and related conditions. *See* 42 U.S.C. § 2000e(k). Title VII and the NYSHRL require satisfaction of the same elements for a successful employment discrimination claim. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 469 (1982). These claims again turn on whether Scelsi suffered an adverse employment action, or in other words whether she was fired or instead given a reasonable accommodation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-3 (1973) (describing the elements of a Title VII discrimination claim). For the reasons already discussed above, this is a material fact that remains in dispute. Accordingly, summary judgment is denied for these claims.

## V.   CLAIMS AGAINST DEFENDANT ERIK HABBERSTAD

Defendant Habberstad moves for summary judgment as to the NYSHRL, Title VII and ADA claims against him in his individual capacity. He does not move for summary judgment as to the NYLL claims naming him as an individual defendant and therefore they are not separately discussed. Habberstad argues that Title VII and the ADA do not allow for individual liability. Scelsi does not respond

7

to these points in her Memorandum of Law. The Court agrees with Habberstad that individuals may not be held liable under Title VII or the ADA. *See Cayemittes v. City of N.Y. Dep''t of Hous. Pres. & Dev.*, 641 F. App'x 60, 61–62 (2d Cir. 2016) ("Title VII does not provide for individual liability." (citing *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014); s*ee also Castro v. City of New* York, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (stating that there is no individual liability under the ADA). Therefore, summary judgment is granted for Habberstad in his individual capacity on these claims.

In contrast, individuals may be held liable under the NYSHRL. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995). The parties continue to dispute whether Habberstad was personally involved in the decision to remove Scelsi from the payroll. *See* Def. SOF at ¶ 93 (Scelsi disputes that Habberstad was not involved, since the employee handbook notes that he is involved in determining accommodation requests and met regularly with Scelsi's supervisors). Because this material fact remains in dispute, summary judgment is denied for Habberstad in his individual capacity as to this claim.

## VI.   NYLL WAGE CLAIMS

Scelsi also brings three claims under the NYLL. She alleges that her employer violated the law by (i) failing to pay her minimum wage for each week worked, (ii) failing to provide her with overtime pay, and (iii) failing to provide her

8

adequate notice forms as to her regular and overtime pay rate. *See* NYLL §§ 650, 195. The parties cross move for summary judgment on these claims.

Under New York law, BMW Habberstad was required to pay Scelsi minimum wage for each week she worked. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.9 (2021) ("The minimum and overtime wage provided by this Part shall be required for each week of work, regardless of the frequency of payment, whether the wage is on a commission, bonus, piece rate, or any other basis."); *see also Karic v. Major Auto. Cos.*, 992 F. Supp. 2d 196 (E.D.N.Y. 2014) (holding that employers must pay employees minimum wage for each week worked, regardless of whether they earn commission in subsequent weeks that would raise their total compensation on average above minimum wage). BMW Habberstad does not dispute that Scelsi did not earn minimum wage some weeks. It argues instead that when her total compensation, including commissions, for the pay period is taken into account and averaged across weeks, Scelsi was paid minimum wage.

However, BMW Habberstad cites no law on point for their proposition. It instead cites a statute in the NYLL that dictates the manner in which a commission-based salesperson should be paid. *See* NYLL § 191(1)(c) (describing the frequency and other logistical requirements for paying commission salespeople). Whether BMW Habberstad complied with this statute is not the question before the Court. Instead, the question is whether BMW Habberstad was

9

required to pay Scelsi minimum wage for each week worked. It is clear from an examination of the statute on point that they were. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.9 (2021). BMW Habberstad cannot average Scelsi's total compensation over a pay period to raise her earned wage for one week above the minimum threshold. In fact, the statute specifically states that "*regardless* of frequency of payment" or whether employees earn commission, they must be paid minimum wage for each week worked. *Id*. (emphasis added). Because there is no dispute of material fact regarding Scelsi's minimum wage claim, summary judgment as to liability is granted to Scelsi on this claim.

Scelsi also alleges that BMW Habbestad failed to comply with New York Law by not paying her overtime wages. With regard to this claim, material facts remain in dispute. Although the Fair Labor Standards Act ("FLSA") does not require overtime pay for automobile salespeople, New York State law does require it. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, §142-2.2 (requiring overtime pay at 1.5 times the minimum wage for employees exempted under the FLSA). However, it continues to be disputed by the parties whether Scelsi worked more than 40 hours per week or whether she took unpaid lunch breaks that would reduce her hours worked below the limit required for overtime pay. Def. SOF at ¶ 18. Scelsi's claim hinges on this fact and therefore it is appropriate for a jury to determine.

Lastly, Scelsi brings claims under sections 195(1) and 195(3) of the Wage Theft Prevention Act ("WTPA"). She alleges that BMW Habberstad violated these laws by failing to provide her an adequate notice both at the time of hiring and at her biweekly payment of wages of her applicable rate or rates of pay, including her overtime pay rate. The parties do not dispute that Scelsi was entitled to overtime at a rate of 1.5 times minimum wage for hours surpassing the overtime threshold, nor that Scelsi was not advised of this rate on either of the types of notices mentioned. Because the WTPA does not require Scelsi to have worked overtime, but merely that she be given notice of her overtime pay rate via written form at hiring and with her paystubs, and because this rate was not contained in either, summary judgment is granted for Scelsi as to liability on these claims. *See* NYLL § 195 (1), (3).

## VII.   CONCLUSION

For the foregoing reasons, Scelsi's motion for summary judgment is GRANTED as to liability with regard to her minimum wage and WTPA claims and DENIED as to all other claims. Defendants' motion for summary judgment is GRANTED as to as to liability with regard to the Title VII and ADA claims against individual defendant Habberstad and DENIED as to all other claims.

In addition to damages, the following disputed material facts are to be determined at trial: (i) whether the employment action at issue was a reasonable accommodation or the termination of Scelsi's employment, (ii) whether Habberstad

11

was involved in the decision to remove Scelsi from the payroll, and (iii) whether Scelsi ever worked more than 40 hours per week.

**SO ORDERED.**

        _/S/ Frederic Block_____
        FREDERIC BLOCK
        Senior United States District Judge

Brooklyn, New York
February 24, 2022